## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CRAIG LIRETTE**                                       **CIVIL ACTION**

**VERSUS**                                              **NO. 16-1306**

**LA. DEPT. OF CORRECTIONS, ET AL**                     **SECTION "B"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Craig Lirette, had been incarcerated in the Richwood Correctional Center in Monroe, Louisiana, but was released from prison on March 5, 2016.[2]  On

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. Nos. 1, 8, 9.

November 8, 2010, Lirette and a co-defendant, Kathy Funck, were charged by bill of information in Jefferson Parish.  Lirette was charged with two counts of indecent behavior with a juvenile under age 13, and Funck was charged with one count of concealing and aiding Lirette after the indecent behavior incidents.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:[4]

> K.F. testified that she was 12 years old and her birthdate was December 28, 1998.  She explained that she lived with her father, but before she had lived in Harahan with her mom, F.F., and C.J.  K.F. said that her bedroom was by her mother's bedroom.  She also said that the bed in her room was for one person. She explained that she heard someone in her room and a banging on the walls. She then saw C.J. on the side of her bed.  She testified that C.J. was naked and got into her bed. She said that when he got into the bed with her the "side of him" touched her. She explained that they were both under the "covers."  K.F. said she screamed and ran out. According to K.F., C.J. said "hey baby where you're going?" She said this incident happened at about 1:00 or 2:00 a.m.  She explained that she was scared, grabbed the phone, and waited for about 20 minutes. She said she then went to her mother's bedroom to tell her what had happened. Her mother told her to grab a pillow and sleep on the sofa. K.F. explained that she grabbed the phone and a flashlight because she was scared. She went to sleep on the sofa, and decided that she would call 9-1-1 if C.J. came back.  K.F. said she was sure that it was her mother's boyfriend, C.J. She identified defendant in court as C.J. She testified that she was familiar with him because he slept over almost every night.
>
> When questioned about when the incident took place, K.F. believed it was a Saturday night during the school year during November.  She believed it was after Halloween and before Thanksgiving.  She explained that F.F. was not at home and thought that she was at a friend's house at the time.  She told her aunt about the incident a few months later, around Mardi Gras.
>
> F.F. testified that K.F. was her younger sister and that J.T. was a good friend of hers.  She explained that Craig Lirette was the boyfriend of her mother, K., and that her father was F.  Her parents were going through a divorce, and she spent every other weekend with her father.  She said that while she lived on

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 11/8/10 (as amended on 9/9/11).

[4]In the following factual summary, C.J. was used by the state court to refer to the petitioner, Craig J. Lirette, and the initial K. was used to refer to the co-defendant, Kathy Funck.

Colonial Club Drive in Harahan, Craig slept over a lot.  She described K.F.'s room as being a few feet from her mother's room.  She testified that she had an aunt named Judy, and that Judy was her father's sister.  F.F. explained an incident involving her mother's boyfriend and her friend J.T.  She testified that she was sleeping in the living room on a sofa and J.T. was sleeping with her, but on a different sofa.  She said that J.T. woke her up at about 6:00 or 6:30 a.m. When she awoke, she observed C.J. running out of the living room, screaming to "be cool, be cool."  She also heard him say not to tell, and that it was a mistake.  She said that J.T. was about to cry and so they went to her bedroom. J.T. told her that C.J. had sat next to her and put his hand down her pants.  She said J.T. was sad and wanted to call the police, but she did not let her.  F.F. explained that she did not want to believe that it had happened.  She did not see C.J. touch J.T.

F.F. testified that she woke her mother up that afternoon to tell her about what had happened.  J.T. told F.F.'s mother about what happened, but her mother said it was a mistake and not to tell anyone because F.F. and J.T. might not be allowed to be friends anymore.

F.F. believed that this happened during their Christmas break from school.  She recalled that her half-sister Amanda and her husband were there that night, and remembered going to a Christmas play for their church that same day.  K.F. was in the play.  However, she testified that she did not know the precise date that this happened.  F.F. testified that she talked to her Aunt Judy about the incident a few months later, around Mardi Gras.  She believed it had happened about two months prior to this.

J.T. also testified at trial.  She testified about an incident she said happened at her friend F.F.'s house at approximately 6:30 a.m., when she was sleeping on the sofa.  She said she woke up to someone moving her legs and sitting down by her.  The person started to rub her leg.  She testified that she turned her head and saw that it was C.J.  She said that C.J. started to squeeze her "butt a little."  She said he then touched her vagina.  J.T. stated that she turned and said "[w]hat the hell.  What are you doing?"  She testified that C.J. started to stutter, not knowing what to say.  J.T. said she got off of the sofa and ran to F.F., who was sleeping on a sofa next to her.  She said that C.J. left the room. J.T. said she told F.F. what happened after they went to F.F.'s bedroom and that she wanted to call the police, but F.F. was shocked and did not let her. According to J.T., F.F. told her mother, K., what happened and she told them not to worry about it because if they told anyone then they would not be able to be friends anymore.  She believed that F.F. went to talk with her mother at around 5:00 p.m. about the incident while she was doing laundry.  J.T. said that she also told K. what had happened.

J.T. recalled that Amanda and Brad were also at the house that morning, and believed it was during the Christmas holidays, recalling that they went to a play that K.F. was in at church at about 6:00 p.m.

When asked if she saw C.J. in court, F.F. said, "I don't know."  Also, J.T. testified that she did not remember what C.J. looked like.

(footnotes omitted) State v. Lirette, 102 So.3d 801, 804-08 (La. App. 5th Cir. 2003); State Record Volume 1 of 6, Louisiana Fifth Circuit Court of Appeal Opinion, 11-KA-1167, pages 3-10, June 28, 2012.

Lirette was tried separately before a jury on September 19 through 21, 2011, and found guilty under count one of the lesser offense of attempted indecent behavior with a juvenile under age 13 and guilty as charged on count two of indecent behavior with a juvenile under age 13.[5]  The state trial court denied Lirette's motion for a new trial at a hearing on September 28, 2011.[6]  After waiver of legal delays, the court sentenced Lirette to consecutive sentences of one year in prison on count one and two years in prison on count two, each without benefit of parole, probation or suspension of sentence.[7]

On direct appeal to the Louisiana Fifth Circuit, Lirette's counsel asserted two errors:[8] (1) The verdict was contrary to the law and evidence. (2) The state trial court erred in failing to allow the defense properly and fully to impeach F.F., the father of the

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes, 9/19/11; Trial Minutes, 9/20/11; Trial Minutes, 9/21/11; Corrected Minute Entry, 9/21/11; Jury Verdict - Count One, 9/21/11; Jury Verdict - Count Two, 9/21/11; St. Rec. Vol. 3 of 6, Trial Transcript, 9/20/11; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 9/20/11; Trial Transcript, 9/21/11; St. Rec. Vol. 5 of 6, Trial Transcript (continued), 9/21/11.

[6]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/29/11; Corrected Sentencing Minutes, 9/29/11; Motion for New Trial, 9/27/11; Trial Court Order, 9/28/11; St. Rec. Vol. 5 of 6, Sentencing Transcript, 9/28/11.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 9/29/11; St. Rec. Vol. 5 of 6, Sentencing Transcript, 9/28/11.

[8]St. Rec. Vol. 6 of 6, Appeal Brief, 11-KA-1167, 3/14/12.

co-defendant's daughters.  In a supplemental brief, Lirette's counsel argued that the state trial court also erred in denying the motion for new trial.[9]

The Louisiana Fifth Circuit affirmed the convictions and sentences on June 28, 2012, finding no merit in Lirette's claims and the supplemental claim abandoned.[10] After errors patent review, the court directed the state trial court to correct a clerical error on the sentencing commitment.  The state trial court complied on July 2, 2012.[11]

The Louisiana Supreme Court denied Lirette's related writ application without stated reasons on February 22, 2013.[12]  His conviction became final ninety (90) days later on May 23, 2013, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

In the meantime, on March 11, 2013, Lirette's counsel filed a motion with the state trial court seeking reconsideration of his sentence for purposes of credit for time

---

[9]St. Rec. Vol. 5 of 6, Supplemental Appeal Brief, 11-KA-1167, 3/22/12.

[10]State v. Lirette, 102 So.3d at 801; St. Rec. Vol. 1 of 6, 5th Cir. Opinion, 11-KA-1167, 6/28/12.

[11]St. Rec. Vol. 1 of 6, Corrected Minute Entry, 9/29/11 (dated 7/2/12).

[12]State v. Lirette, 108 So.3d 763 (La. 2013); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2012-K-1694, 2/22/13; La. S. Ct. Writ Application, 12-K-1694, 7/20/12.

served.[13]  At an April 26, 2013, hearing, the state trial court denied the motion.[14]  Lirette did not seek review of this ruling.

On February 3, 2014, Lirette through the same counsel filed an application for post-conviction relief in which he asserted three grounds:[15] (1) He was denied effective assistance of counsel when counsel failed to assure that certain impeachment evidence was authenticated for trial use. (2) He was denied the right to present a complete defense when the state trial court found impeachment evidence inadmissible. (3) He was denied effective assistance of counsel when he was given incorrect information and advice by trial counsel.

After the State responded, the state trial court denied the application on September 8, 2014, finding no merit in the ineffective assistance of counsel arguments and that the denial of complete defense claim was procedurally barred under La. Code Crim. P. art. 930.4(A) as repetitive of matters addressed on direct appeal.[16]

On December 11, 2014, the Louisiana Fifth Circuit denied the related writ application filed by Lirette's counsel, finding no error in the state trial court's ruling.[17]

---

[13]St. Rec. Vol. 2 of 6, Motion to Reconsider Sentence, 3/11/13.

[14]St. Rec. Vol. 2 of 6, Minute Entry, 4/26/13.

[15]St. Rec. Vol. 2 of 6, Application for Post-Conviction Relief, 3/28/14.

[16]St. Rec. Vol. 2 of 6, Trial Court Order, 9/8/14; State's Response, 6/30/14; Trial Court Order, 3/28/14.

[17]St. Rec. Vol. 6 of 6, 5th Cir. Order, 14-KH-811, 12/11/14; 5th Cir. Writ Application, 14-KH-811, 10/20/14.

The Louisiana Supreme Court denied the subsequent writ application filed by Lirette's counsel without stated reasons on May 22, 2015.[18]

## II.    FEDERAL HABEAS PETITION

On February 16, 2016, the clerk of this court filed Lirette's federal habeas corpus petition in which he identified no claims for review.  However, according to the records of the clerk of this court, on February 15, 2016, a man who identified himself as Lirette's brother hand-delivered the petition to the clerk's office and paid the $5.00 filing fee.  The petition was allotted and formally filed the next day, February 16, 2016, after processing by the clerk's office.

The only claim arguably identifiable on the form petition appears on page 11 where he notes that the police report said he had blonde hair when his hair is dark brown or almost black.[19]   Lirette did not submit a supporting memorandum, although he attached the briefs filed by his counsel in the state courts on post-conviction review.

The State filed a response in opposition to Lirette's petition conceding that Lirette remained in custody for purposes of relief under Section 2254 despite his release from prison on March 5, 2016.[20]   The State asserted that Lirette's petition was not timely, noting that it was filed by hand through a third party, and that it was not in

---

[18]State v. Lirette, 170 So.3d 983 (La. 2015); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2015-KP-0037, 5/22/15; La. S. Ct. Writ Application, 15-KP-37, 1/7/15.

[19]Rec. Doc. No. 1, p. 11.

[20]Rec. Doc. No. 9.

compliance with Rule 2(c) of the Rules Governing Section 2254 Cases, because it specified no grounds for relief.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Lirette's petition filed by hand delivery on his behalf on February 15, 2016.[22]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not

---

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The federal "mailbox rule" does not apply to a petition unless it is mailed by the prisoner. See e.g., Dison v. Whitley, 20 F.3d 185, 187 (5th Cir.1994) (prisoner's "use of an unknown agent does not trigger the Houston [v. Lack, 487 U.S. 266 (1988),] exception that is limited to filings with prison officials, over whom a prisoner has no control."); Knickerbocker v. Artuz, 271 F.3d 35, 37 (2d Cir. 2001) ("We join the other circuits that have addressed this issue by holding that the prison mailbox rule established in Houston does not apply where a pro se prisoner delivers his notice of appeal to someone outside the prison system for forwarding to the court clerk."); Llovera v. Florida, No. 13-859, 2013 WL 5468256, at *3 n.2 (D.S.C. Sep. 30, 2013) ("mailbox rule" did not apply to filing where "there [was] nothing on the envelope to indicate mailing from a place of confinement."); Pearson v. Vaugh, 984 F. Supp. 315, 317 (E.D. Pa.1997) ("mailbox rule" is inapplicable when a prisoner decides to send his complaint to a third party for filing, because the prison is no longer responsible for any delays in filing).

be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Lirette's federal petition was not timely and that his petition otherwise fails to comply with the federal Rules Governing Section 2254 Petitions. While both defenses are supported by the record, no amendment or clarification of his intended claims would alter the fact that Lirette's federal habeas petition is untimely and must be dismissed with prejudice for that reason.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[23]  Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  Lirette's conviction became final on May 23, 2013, which was ninety (90) days after the Louisiana Supreme Court completed review of his writ

---

[23]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

application following direct appeal.  Applying Section 2244 literally, Lirette had one year from finality of his conviction, or until May 23, 2014, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that AEDPA's one-year statute of limitations period in Section 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Lirette has asserted no reason, and I can find none, that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case.  The record does not demonstrate the type of circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent.  See Holland v. Florida, 560 U.S. 631, 651-54 (2010) (equitable tolling would be warranted where attorney was more than negligent when he

failed to satisfy professional standards of care by ignoring the client's requests timely to file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed

11

application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending shall not be counted toward any period of

limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added).  By its

plain language, this provision does not create a new, full, one-year term within which a

federal habeas petition may be filed at the conclusion of state court post-conviction

proceedings.  Flanagan, 154 F.3d at 199 n.1.  The Supreme Court has clearly described

this provision as a tolling statute.  Duncan, 533 U.S. at 175-178.

        The decisions of the Fifth Circuit and other federal courts have held that because

this statute is a tolling provision, the time during which state court post-conviction

proceedings are pending must merely be subtracted from the one-year limitations

period:

>       [Section] 2244(d)(2) provides that the period during which a properly filed
>       state habeas application is pending must be excluded when calculating the
>       one[-]year period.  Under the plain language of the statute, any time that
>       passed between the time that [petitioner's] conviction became final and
>       the time that his state application for habeas corpus was properly filed
>       must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926, at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

        For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the

same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Lirette's case, the one-year AEDPA statute of limitations period began to run on May 24, 2013, the day after his conviction became final under federal law.  The one-year period continued to run without interruption for 255 days until February 3, 2014, when Lirette's counsel filed an application for post-conviction relief with the state trial court.  This application tolled the running of the AEDPA one-year statute of limitations while it remained pending through May 22, 2015, when the Louisiana Supreme Court denied his related writ application.

The AEDPA one-year statute of limitations began to run again on May 23, 2015, and continued to do so for the remaining one hundred and ten (110) days, until September 9, 2015, when it expired.  Lirette had no properly filed state court application for post-conviction relief or other collateral review pending during that period of time.

I recognize that, just before the date on which his conviction became final and the AEDPA statute of limitations period began to run, Lirette's counsel filed a motion to reconsider his sentence.  That pleading remained pending in the state courts from its filing by counsel on March 11, 2013 through Monday, May 27, 2013,[24] which was the expiration of the time to seek review of the denial of the motion.  However, as the State

---

[24]Under La. App. R. 4-3, Lirette had thirty days from the state trial court's April 26, 2013, ruling to seek review in the Louisiana Fifth Circuit. He did not, however, seek review of that ruling. The review period ended on Sunday, May 26, 2013, and Monday, May 27, 2013, was Memorial Day, leaving the last day of the period to fall to the next business day, Tuesday, May 28, 2013.  Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

asserts, this motion was filed more than one year after Lirette's sentencing and was therefore not timely under Louisiana law.  La. Code Crim. P. art. 881.1; see State v. Williams, 693 So.2d 249, 255 (La. App. 4th Cir. 1997) (failure to file a motion to reconsider sentence within the time period required prevents the trial court from considering the motion); State v. Caliste, 125 So.3d 8, 9 (La. App. 4th Cir. 2013) (same).  The motion therefore was not properly filed and did not afford him any tolling under the AEDPA.  Pace, 544 U.S. at 414.

However, even if the motion could be considered properly filed, the additional five days of tolling it would have provided would not render Lirette's federal petition timely.  Under this alternative calculation, as calculated above, the motion to reconsider was filed by counsel on March 11, 2013.  The state trial court denied the motion on April 26, 2013, and it would have remained pending for tolling purposes until Tuesday, May 28, 2013, when Lirette did not seek review of the denial of the motion.  Thus, although Lirette's conviction was final under federal law on May 23, 2013, the pending motion would have tolled the AEDPA one-year statute of limitations only through May 28, 2013, and it would have begun to run again on May 29, 2013. The one-year period it would have continued to run without interruption for 250 days until February 3, 2014, when Lirette's counsel filed the application for post-conviction relief with the state trial court.  The application tolled the running of the AEDPA one-year period while it remained pending through May 22, 2015, when the Louisiana Supreme Court denied his related writ application.

15

The AEDPA one-year filing period would have begun to run again on May 23, 2015, and continued to do so for the remaining one hundred and fourteen (114) days, until September 14, 2015, when it expired.  Lirette had no properly filed state court application for post-conviction relief or other collateral review pending during that period of time.  Thus, even if the untimely state trial court motion to reconsider is considered in the timeliness calculation, Lirette's federal petition would still be untimely filed under the AEDPA.

Lirette's federal petition is deemed filed on February 15, 2016, when it was hand-delivered to the clerk of court with the filing fee, which was after the AEDPA's one-year statute of limitations expired on September 9, 2015.  It is therefore not timely filed and must be dismissed with prejudice for that reason.

## <u>RECOMMENDATION</u>

For the foregoing reasons, it is **RECOMMENDED** that Lirette's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.

16

Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc)

(citing 28 U.S.C. § 636(b)(1)).[25]

New Orleans, Louisiana, this _____19th_____ day of August, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[25]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.